## Worham L. Fitch *vs.* Bavil Seymour.

A. orally requested B. to erect a mill dam, and orally promised him that if the dam should flow his land, he would not claim damages for the flowing: B. built a dam and mill, and flowed A.'s land, and afterwards conveyed the dam and mill to C., who continued to flow the land: A. entered a complaint against C. to recover damages for this flowing, and it was decided that he had waived his right to damages, by his agreement with B., and could not recover: A. afterwards conveyed his land to D., with a covenant that it was free from all incumbrances, and D. brought an action against him for breach of this covenant, alleging the right of C. to flow the land without payment of damages. *Held,* that C. had no such right, as against D., by virtue of A.'s oral agreement with B., and that no breach of the covenant was shown.

This was an action of covenant broken, brought on a deed of bargain and sale, dated October 3d 1838, by which the defendant conveyed to the plaintiff a tract of land in Otis, with warranty, and with a covenant that the same was free of all incumbrances. The plaintiff alleged, as a breach of this covenant, a third person's right to flow, without paying damages, a part of the land, by means of a mill dam, erected by Israel A. Jones in 1825, and ever since kept up.

At the trial in the court of common pleas, before *Ward*, J. the plaintiff, for the purpose of showing the right of the owner of the dam and the mill therewith connected to flow said land, introduced the depositions of Israel A. Jones and Jon-

athan N. Wright. Said Jones deposed, that he erected said dam in 1825, and that, before it was erected, the defendant requested and urged him to build it and erect a mill for the benefit of the neighborhood, and promised that, if it should overflow his land, he would not ask any damages ; but that the defendant made "no contract nor stipulation in writing relative to the flowing of his land." Said Wright deposed, that the defendant, some time after the dam and mill were built, told him that he (the defendant) "thought, when he gave the privilege to erect the dam, that the benefit of having a mill in the place would compensate him for the flowing of his land."

The plaintiff also introduced, without objection from the defendant, the record of the proceedings had on a complaint brought by the defendant against William Carter, (to whom the dam and mill were conveyed by Israel A. Jones in 1831,) for flowing the land by means of said dam, as reported in 2 Met. 520. Evidence was then introduced, by both parties, as to the diminution of the value of the plaintiff's land, by reason of the flowing thereof by said dam.

The defendant then offered in evidence a mortgage deed, given to him by the plaintiff on the 3d of October 1838, tc secure payment of notes (some of which were still unpaid) given by the plaintiff to him as the consideration of the defendant's deed aforesaid, of the same date, to the plaintiff. This mortgage deed contained the same covenants which were contained in the defendant's deed to the plaintiff; and the defendant contended that it was a bar to the plaintiff's recovery in this action. But the judge ruled that it was not.

The defendant also insisted, that the plaintiff's evidence did not show a legal incumbrance on the land, which entitled the plaintiff to recover. But the judge instructed the jury, that they should find a verdict for the plaintiff, for his damages, if they believed the evidence adduced by the plaintiff. The jury found a verdict for the plaintiff, and the defendant alleged exceptions to the judge's ruling and instruction.

*Bishop*, for the defendant. A right to flow land for working a mill is given by the mill act. No grant, therefore, is

necessary to create this right ; and the law does not regard it as an incumbrance, so long as a claim to compensation exists. The plaintiff is entitled to compensation. The defendant's paro relinquishment of damages does not bind his grantee. The case of *Seymour* v. *Carter*, 2 Met. 520, which was before the court on the same facts that exist in this case, decided only that Seymour could not, under the mill act, recover damages of Jones's grantee. He had waived his demand. But this waiver, being by parol, does not bind his grantee of the land. It was his individual engagement, and did not attach to the land. The *St.* of 1795, *c.* 74, made provision for annual damages only ; and no statute, until after the dam in question was erected, provided for gross damages. The defendant, therefore, received or waived nothing more than *his* claim to annual damages. The annual claim runs with the land. It may have been ascertained, prospectively, by a jury; but it is payable to the owner, for the time being, of the land flowed. A perpetual right to flow without compensation is an easement, which can be created only by grant, or deed recorded, so as to bind a purchaser without notice.

The plaintiff's mortgage deed to the defendant, of even date with the defendant's deed containing the covenant alleged to be broken, is a bar to this action. So far as regards the plaintiff, the defendant has title and right to possession of the land, subject to be defeated only by performance of the condition of the mortgage. *Erskine* v. *Townsend*, 2 Mass. 495. *Goodwin* v. *Richardson*, 11 Mass. 469. *Flagg* v. *Flagg*, 11 Pick. 477. *Blanchard* v. *Brooks*, 12 Pick. 47. *Fay* v. *Cheney*, 14 Pick. 399.

*Sumner*, for the plaintiff. The doctrine contended for by the defendant is, that a land owner may encourage his neighbor to build a mill, by a promise which will estop him to claim damages for flowing, but may sell his land, after the mill is built, for a consideration equal to its value without incumbrance ; and that his grantee may sustain a complaint against the mill owner, under the mill act. If this be so, then full compensation, made to a land owner for a perpetual

right to flow his land, would leave him to sell his land for the like value, and enable his grantee to maintain a like complaint. This is too unjust to the mill owner to be supported by law. *Lex nemini facit injuriam.*

By *Sts.* 1795, *c.* 74, and 1797, *c.* 63, if the land owner give the mill owner a right to flow without payment of damages, or for an agreed composition, whether orally or otherwise, then, it is submitted, the entire rights of the mill owner become fixed, not only in himself, but in his heirs and assigns, against all claim for damages that can be set up by the land owner, his heirs and assigns.

In *Seymour* v. *Carter*, 2 Met. 520, Jones's assignee of the mill met Seymour's complaint by setting up his contract with Jones. This shows that the contract was something more than an individual engagement, and that it did attach to the land, and became a vested right which passed from Jones to Carter, and is a right now held by Carter, not only against Seymour, but also against his grantee. If Seymour waived nothing more than his claim to annual damages, why did he not recover gross damages on his complaint against Carter?

The case is analogous to that of land taken for a highway. Only the owner of the land at the time of the laying out of the way can claim damages. He receives them, and an easement is fixed upon the land. And the easement is equally fixed, if he gives the land for the benefit derived from the way; fixed not only against himself, but against his heirs and assigns, even though no deed or writing be executed by him. And if he afterwards conveys the land, with a covenant that it is free of incumbrance, he is liable in an action of covenant broken. *Kellogg* v. *Ingersoll*, 2 Mass. 97. *Prichard* v. *Atkinson*, 3 N. Hamp. 335.

No authority is cited to sustain the objection which is raised from the plaintiff's mortgage against his maintenance of this action. It is not for the defendant to say that his covenants are a nullity, merely because the plaintiff has given him a mortgage as collateral security for the payment of the notes which were given to him as the consideration of those

covenants. A mortgagee has a complete legal title only só far as it is necessary to enable him to enforce his right to the estate as a pledge for the security of his money. *Blanchard* v. *Brooks,* 12 Pick. 57. While a mortgage continues a pledge, it is a mere incident to the debt, and, to most purposes, a chattel interest following the nature of the debt. *Goodwin* v. *Richardson,* 11 Mass. 472, 473. The defendant, by his deed to the plaintiff, undertook to convey to him such a fee simple estate as to enable the plaintiff to hold it against all others, free from all incumbrances except the mortgage in question. The plaintiff, then, ought to have a right to sell the land with perfect power to enter into covenants against every other incumbrance. This he cannot do, because of the right to flow, given by the defendant to Jones and his assigns. For this incumbrance he has the remedy which he now seeks.

The opinion of the court was delivered at September term 1846.

SHAW, C. J. The court are of opinion that the facts do not show that the land conveyed with warranty was charged with any incumbrance or service, by the parol agreement of Seymour, made when the mill was built, that he would not claim damages. Strictly speaking, the right given by the mill acts to the mill owner is not that of flowing, or making any other direct use of his neighbor's land adjacent to the stream, above his own, but only to raise a dam on his own land, to a height sufficient to raise a suitable head of water, and to continue the same to his own best advantage, although the land of another is thereby flowed. We do not, however, mean to say that a right to keep up such head of water, without payment of damages, may not, under some circumstances, be an incumbrance on the land. Such a charge might be created by grant; but such a grant would be the grant of an easement, or interest in land, and could only be made by writing. Rev. Sts. *c.* 59, § 29. Whether the assessment of gross damages, and the payment of the same by the mill owner, would create such an incumbrance, it is not necessary to decide. No provision for the assessment of gross damages existed till 1830,

(*St.* 1829, *c.* 122,) after the mill in question was erected. It is manifest that, under the existing laws, Rev. Sts. *c.* 116, §§ 19 – 22, no such case can exist, until a complaint has been made in due form of law, and tried, and the jury have assessed a sum in gross, which would be a reasonable compensation for all damages to be occasioned by the use of such dam ; the complainant must, within three months, have elected to take such gross sum, and have entered such election on the record ; and the mill owner, within three months more, must have paid it. Until this is done, the claim, under the statutes, can be for annual damages only.

The ground, upon which the case of *Carter* v. *Seymour*, 2 Met. 520, was decided, was, that nothing then appearing showed that any easement or privilege in favor of the mill owner had been created in or over the estate of Seymour. If there was no service due to the estate of the mill owner, there was none due from the estate of the land owner. If it was subject to no such service, it was under no incumbrance. The case proceeded on the ground that the act of the mill owner was the exercise of a statute right ; that the right of Seymour was to demand a sum of money, as owner, for the time being, of the land flowed ; that this was a mere personal right, which might be discharged or waived by parol ; and that his personal right, both as against the original builder of the mill and his successor, was thus waived. But if the statute gives the right to each successive owner of the land flowed to claim annual damages, then Seymour's grantee has that right. He is barred by nothing which Seymour has done. But it is said that it would be gross injustice, which the law will not warrant, after Seymour encouraged Jones to build the mill, and waived damages for flowing, because the mill would be of benefit to his estate, if Seymour's successor can now claim damage of the mill owner. It may be very unjust for Seymour's grantee to take the estate thus benefitted and to demand any damage. But the true answer is, that the agreement, if it extended to future damages, could not bind the estate, because it was not in writing. An owner of land

may have granted his neighbor a right of way by parol, and even on a valuable consideration, and the neighbor may have enjoyed it fifteen years ; it may be very unjust for the owner, or for his grantee, with knowledge of these facts, to repudiate the grant and cut off the way ; yet if he will he may, because *ita lex scripta est.* The grantee of a right, privilege, or ease- ment in land, must secure it in the manner the law provides ; otherwise, the law cannot guaranty it to him.

On the other question, whether the plaintiff, having recon veyed the estate to the defendant, in mortgage, with cov- enants in the same terms and coextensive with the defend- ant's covenants with him, can maintain this action, before he has redeemed, the court give no opinion. See *Haynes* v. *Stevens,* 11 N. Hamp. 28.

*New trial granted.*